(May 26, 1899.)

# BRANSTETTER v. WILLIAMS.

## [57 Pac. 433.]

MINING DITCHES—APPROPRIATION OF WATER FOR MINING PURPOSES—
    PRIORITY.—Plaintiffs' predecessors in interest located and appropriated one hundred and twenty-five inches of the waters of Elk creek, in 1863, and utilized the same for purposes of placer mining. In December, 1863, the predecessors in interest of defendants located and appropriated all the surplus or available water in Elk creek and tributaries (Deer creek included), and used the same for mining purposes through a ditch constructed during 1864. During the year 1865, plaintiffs' predecessors constructed another ditch, with a capacity of five hundred inches of water, and connected the same with the first-named ditch by a flume across Elk creek, and also enlarged the first-mentioned ditch to a capacity of five hundred inches. *Held*, that, as against defendants, plaintiffs could only claim priority for one hundred and twenty-five inches of the water of Elk creek. The finding of the

lower court against the claim of appellants for damages held to be sustained by the evidence.

(Syllabus by the court.)

APPEAL from District Court, Boise County.

Hawley & Puckett, for Appellants.

Declarations of the grantor are admissible, not only as against himself, but against parties claiming under him. The subsequent claimants are considered as standing in his place and as having taken the *title cum onere,* subject to the same charges and restrictions which attached to it in his hands. It matters not whether the declarations relate to the limits of the party's own premises, or to the extent of his neighbor's, or to the boundary line between them, or to the nature of the title he asserts. If their purpose is to restrict his own premises or lessen his own title, they are admissible. (*Stanley v. Green,* 12 Cal. 148; *McFadden v. Wallace,* 38 Cal. 51; *McFadden v. Ellmaker,* 52 Cal. 378.) Declarations of a former owner of land are admissible against those claiming under him by subsequent title. (*Padgett v. Lawrence,* 10 Paige, 170, 40 Am. Dec. 232; *Harrington v. Slade,* 22 Barb. 165; *Vrooman v. King,* 36 N. Y. 482; *Chadwick v. Fonner,* 6 Hun, 545; *Riddle v. Dixon,* 2 Pa. St. 372, 44 Am. Dec. 207; *Fickett v. Swift,* 41 Me. 65, 66 Am. Dec. 214; *Maxwell v. Harrison,* 8 Ga. 61, 52 Am. Dec. 385.) A right to the use of water may be acquired by an exclusive and uninterrupted enjoyment of the water in a particular way to a period corresponding to the time fixed by the statute of limitations as a bar to an entry on land. (*Crandell v. Woods,* 8 Cal. 136; *Union Water Co. v. Crary,* 25 Cal. 504, 85 Am. Dec. 145; *American Co. v. Bradford,* 27 Cal. 360; *Los Angeles v. Baldwin,* 53 Cal. 469.) If one goes upon the public land of the United States and appropriates water for a lawful purpose, and is permitted to continue its adverse enjoyment and use for more than ten years, such appropriation ripens into a title which cannot be disturbed by one succeeding to the rights of the United States. (*Tolman v. Casey,* 15 Or. 83, 13 Pac. 669.) The right acquired by prescription is measured by the right enjoyed; it is always confined to the right as

exercised for the full period of time prescribed by the statute. (*Boynton v. Longley,* 19 Nev. 69, 3 Am. St. Rep. 781, 6 Pac. 437.) But our right here has been exercised during all these years to the full carrying capacity of our ditch, five hundred inches, whenever the supply of water in Elk creek was sufficient to fill it. Appellants have clearly shown that their use of the water was open, peaceable, uninterrupted, and under color and claim of right, and having so shown their right at this late day cannot be disputed or disproved. (*Union etc. Co. v. Dangberg,* 2 Saw. 450, Fed. Cas. No. 14,370; *Mining Debris Case,* 9 Saw. 441, 18 Fed. 753; *Winter v. Winter,* 8 Nev. 129; *Ledu v. Jim Yet Wa,* 67 Cal. 346, 7 Pac. 731; *Cave v. Crafts,* 53 Cal. 135; *Gallaher v. Montecito etc. Co.,* 101 Cal. 242, 35 Pac. 770; *Grigsby v. Clear Lake etc. Co.,* 40 Cal. 396; *Evans v. Ross* (Cal.), 8 Pac. 88; *Cox v. Clough,* 70 Cal. 345, 11 Pac. 732.)

W. E. Borah and George Ainslie, for Respondents.

All matters which we have been discussing are questions of fact. And we might have contented ourselves with calling attention to the well-established rule, that where there is evidence to sustain the decision, or where there is a conflict of evidence, the decision of the lower court will not be disturbed. These are all matters upon which the court found, and being matters, too, upon which there was a conflict of testimony, the decision of the lower court is conclusive. (*Sears v. Flodstrom,* 5 Idaho, 313; 49 Pac. 11; *Murphy v. Montandon,* 4 Idaho, 320, 39 Pac. 195; *Commercial Bank v. Lieuallen,* 5 Idaho, 47, 46 Pac. 1020; *Spaulding v. Coeur D'Alene Co.,* 5 Idaho, 528, 51 Pac. 408.) If the plaintiffs were prior appropriators, and if we have acquiesced in their prior appropriation, certainly there could be no title acquired by adverse use. (*Union etc. Co. v. Ferris,* 2 Saw. 176, Fed. Cas. No. 14,371, 2 Saw. 450, Fed. Cas. No. 14,370; *Dick v. Bird,* 14 Nev. 167; *Grigsby v. Water Co.,* 40 Cal. 396; *Anaheim Water Co. v. Water Co.,* 64 Cal. 185, 30 Pac. 623; *Boyton v. Water Co.,* 40 Cal. 316.) The party claiming by prescription must show affirmatively that his use injured the party against whom he claimed to have acquired title; that is, took a part of his water when he needed it. (*Lakeside Ditch Co. v. Crane,* 80

Cal. 181, 22 Pac. 76; *Hanson v. McCue,* 42 Cal. 310, 10 Am. Rep. 299.)    It is not enough that a party prove possession for the statutory period.    He must show an adverse or hostile holding. This, we understand, is not contended for in this case.    (Kinney on Irrigation, secs. 294, 295; *Alta Land Co. v. Hancock,* 85 Cal. 219, 20 Am. St. Rep. 217, 24 Pac. 645.)    The use of water by permission of the owner cannot be adverse use or ripen into a prescriptive right.    (*Felz v. City of Los Angeles,* 58 Cal. 74; *Anaheim Water Co. v. Water Co.,* 64 Cal. 185, 30 Pac. 623.)

HUSTON, C. J.—This action is brought by the plaintiffs to enjoin the use by defendants of certain waters of Elk creek, and for damages alleged to have been sustained by plaintiff by reason of the wrongful acts of defendants in the use of such waters. The case was tried before the court without a jury, and judgment rendered for the defendants, from which judgment, and from the order overruling a motion for a new trial, this appeal is taken.

While there are some exceptions to the admission of evidence, appellants rely mainly upon the contention that the findings are not supported by the evidence, and that the court failed to make findings upon several material issues. We do not think the latter claim is sustained by the record, and, while the evidence is conflicting, we are of the opinion that the conclusions of the court are sustained by the evidence. The facts, as they appear from the record, and as they are found by the court, are substantially as follows: "That in 1863, the plaintiff's grantors and predecessors in interest appropriated one hundred and twenty-five inches of water, measured under a four-inch pressure, of the waters of that certain stream in Boise county, state (then territory) of Idaho, known as 'Elk creek'; said appropriation being made at a point about four miles above the town of Idaho City, in said county. That immediately after said appropriation, plaintiff's grantors and predecessors in interest built a ditch, commonly known as the 'Tibbits ditch,' for the purpose of conveying said waters from said point of location and diversion, and in due time applied said water to a beneficial use, to wit, the use of placer mining, said ditch having a carrying cap-

acity of one hundred and twenty-five inches, of water measured under a four-inch pressure." "That during the late fall and winter of 1865 and spring of 1866, the predecessors in interest of plaintiffs constructed the Dunn ditch proper, now owned by plaintiffs, and connected the same by a flume across Elk creek with said Tibbits ditch, and over a portion of the same, and enlarged the said portion of the Tibbits ditch so as to make the Dunn ditch carry five hundred inches of water under a four-inch pressure." "That in December, 1863, the predecessors in interest of the defendants located the water right and ditch now owned by defendants, and then known as the 'Summit ditch,' and afterward as the 'Channell ditch,' which ditch was constructed during the winter of 1863 and the year 1864, and that said ditch was constructed with a capacity of about four hundred inches of water under a four-inch pressure; and the waters of Elk creek were diverted and appropriated by means of said ditch in the year 1864; for mining purposes, by defendants' predecessors in interest, and the defendants are now the owners and in possession of said Channell ditch." These findings—and they are fully supported by the evidence; in fact, there is really no contention as to them—would seem to settle the question of priority between plaintiffs and defendants; but the plaintiffs seek to overcome their inevitable effect by showing that the predecessors in interest of the defendants have, at some time in the past, recognized a priority of right in the plaintiffs to the use of the waters in question. Of course, evidence of this kind is largely reminiscent; but we think, taking all of the evidence together, the conclusion reached by the court was correct.

Upon the question of damages we think the preponderance of evidence is largely with the defendants. The claims being worked by the defendants are located some five miles from the head of plaintiffs' ditch, and at an altitude higher than the head of plaintiffs' ditch. The water used by defendants, after such use, is turned into Wolfe creek, and reaches the main channel of Elk creek at a point about a mile above the head of plaintiffs' ditch. The bed of Wolfe creek, through which the water flows for several miles before entering Elk creek, is, to considerable extent, covered with a heavy growth of underbrush

and the bed of Wolfe creek is flat and open for some distance immediately below the mouth of defendant's ditch. It is hardly probable that any serious damage would result to plaintiffs from the mining operations of defendants. In fact, the evidence up-. on this question on the part of plaintiffs is so meager and inconclusive as to scarcely raise a presumption.

Plaintiffs claim in their complaint that defendants are insolvent, and unable to respond in damages, as an additional ground for injunction; but, as no proof was offered in support of the allegation, and nothing is said in the brief of counsel or in oral argument upon the point, we assume it to have been abandoned.

We might rest the decision in this case upon the fact that, the evidence being conflicting, the findings of the lower court will not be disturbed; but a careful examination of the record satisfies us that the findings are fully sustained by the evidence. We have examined the record with much care touching appellants' claim, of adverse user, but we are unable to agree with this contention. It seems to us such a contention is at variance, not only with the allegations of appellants' complaint, but of the whole theory of their case. Appellants allege in the ninth paragraph of their complaint that defendants' predecessors in interest have for a period of twenty years last past always recognized and admitted the superior rights of plaintiffs and their predecessors in interest in and to the waters of said Elk creek. This is scarcely consistent with appellants' claim of adverse user.

It was not necessary or material, under the issues in this case, for the court to determine the amount of water to which the defendants are entitled. The findings cover all the material issues in the case, and are supported by the evidence. The judgment of the district court is affirmed, with costs to respondents.

Quarles and Sullivan, JJ., concur.